IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WESLEY C. CHEERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:04-cv-136-WDS |
| ) | |
| RICHARD E. MORGENTHALER, ) | |
| JULIUS FLAGG, CHRISTINE BROWN, ) | |
| LT. GRACE, and C/O JAMES, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

This matter has been referred to Magistrate Judge Donald G. Wilkerson by Senior District Judge William D. Stiehl pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b) and Local Rule 72.1(a) for a Report and Recommendation on two Motions to Dismiss filed by the Defendants, Julius Flagg, Christine Brown, Lt. Tom Grace, C/O Tony James, and Richard Morgenthaler on December 5, 2005 and February 28, 2006 (Doc. 19 & 34). For the reasons set forth below, it is **RECOMMENDED** that the Defendants's Motions to Dismiss be **GRANTED** in part and **DENIED** in part, and that the Court adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

The plaintiff, Wesley Cheers, is currently an inmate at Big Muddy River Correctional Center ("Big Muddy"). His complaint alleges violations of his constitutional rights under the First, Eighth and Fourteenth Amendments and is brought pursuant to 42 U.S.C. § 1983. The alleged violations in this case occurred at Pinckneyville Correctional Center ("Pinckneyville") and Cheers filed his original complaint while he was incarcerated at Pinckneyville. At the time

1

of the alleged violation, all the defendants worked at Pinckneyville.

Cheers alleges the following facts in this case: On January 10, 2002 he staged a hunger strike in his cell (Doc. 1, p. 4). Defendants Morgenthaler, Flagg, Brown, Grace and James repeatedly asked Cheers to end his hunger strike (Doc. 1, p. 5). After 72 hours on the hunger strike, Cheers was taken to the hospital where Morgenthaler, the Assistant Warden at Pinckneyville, asked him "what he was doing?" Cheers told Morgenthaler that he was working on a habeas petition which had upcoming deadlines. Id. Morgenthaler then told Flagg to go with Grace and James to Cheers's cell and take all of his "legal property." Id. After they took all of his "legal and personal property," which included personal items such as family photographs, Morgenthaler told Cheers that he would get his property back when he came off his hunger strike. Id.

At some later point Brown, the healthcare administrator at Pinckneyville, instructed Grace and James to remove Cheers's underwear and hygiene items from his cell, which they did (Doc. 1, p. 5). Cheers subsequently ended his hunger strike; however, he was informed that none of his items could be found. Id. He filed a grievance and the grievance was denied. Id.

On February 27, 2004, Cheers filed a *pro se* complaint in this case. Within this complaint, Cheers requested declaratory and injunctive relief as well as compensatory and punitive damages. Pursuant to Federal Rule of Civil Procedure 8(f) and 10(b), Judge Stiehl separated the claims into numbered counts in an Order dated September 21, 2005. (Doc. 11). These counts are as follows:

**COUNT 1:**   Against all defendants for violation of the Eighth Amendment for taking the personal property of a qualified individual with a disability.[1]

**COUNT 2**:   Against all defendants for violation of the Fourteenth Amendment by taking the personal property of a qualified individual with a disability on a hunger strike but not the property of non-qualified individuals on a hunger strike.

**COUNT 3**:   Against all defendants for violating Plaintiff's right of access to the courts by taking his legal papers, knowing he faced a court deadline.

**COUNT 4**:   Against all defendants for violating Plaintiff's due process rights by taking his personal property without providing him with a disciplinary report.

**COUNT 5**:   Against all defendants for negligence under Illinois law.

In that same Order, Judge Steihl dismissed counts 1, 2, and 4 and allowed Cheers to continue in his claim that the defendants violated Cheers's right of access to the courts and his state based claim of negligence. (Doc. 11). Each of the motions to dismiss are identical and will be considered jointly.

### CONCLUSIONS OF LAW

The defendants bring a motion to dismiss and state five grounds for dismissal, they are as follows: 1. Cheers's access to the courts claim is barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994);  2. Cheers is not entitled to injunctive relief because no ongoing constitutional violation exists; 3. Cheers's request for injunctive relief is moot; 4. Cheers's negligence claim is barred by sovereign immunity; and 5. The Court should decline supplemental jurisdiction over Cheers's negligence claim after dismissing Cheers's constitutional claim.

---

[1] Cheers states in his complaint that he is a qualified individual with a disability. While he does not clarify in his complaint the nature of his disability, he does state in a later affidavit that he uses a wheelchair. (Doc. 39, ex 1, p. 5).

I. **CHEERS'S CLAIMS FOR DAMAGES SHOULD BE BARRED BY HECK**

In <u>Heck</u>, the petitioner, Roy Heck, was convicted of voluntary manslaughter and was serving a fifteen year sentence. Heck filed a suit for damages pursuant to 42 U.S.C. §1983 alleging that he was convicted based on an unlawful investigation and arrest, that the prosecutor failed to submit exculpatory evidence, and that improper evidence was used at trial. The District Court dismissed the lawsuit and the Seventh Circuit Court of Appeals affirmed on the basis that the suit was a habeas corpus petition and Heck had failed to exhaust state remedies. <u>Heck</u>, 512 U.S. at 479-480. In affirming, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

<u>Id.</u> at 486-487 (footnotes omitted).

Thus, in general terms, if a plaintiff files suit under §1983 for damages in which he is essentially challenging the validity of his criminal conviction, the suit must be dismissed unless the conviction has been invalidated in some manner. See <u>Gauger v. Hendle</u>, 349 F.3d 354, 362

(7th Cir. 2003) ("Heck, to repeat, says that a criminal defendant can't sue for damages for violation of his civil rights, if the ground of his suit is inconsistent with his conviction having been constitutional, until he gets the conviction thrown out."). The defendants argue that as this access to courts claim is secondary to what would otherwise be a habeas claim, it is barred and the plaintiff must pursue such a claim in accordance with habeas law.

The defendants further rely on Nance v. Vieregge, 147 F.3d 589 (7th Cir. 1998). In that case, an inmate, Fred Nance, was transferred from one institution to another in order to be closer to the court where he was going to seek to withdraw a guilty plea. During the transfer, a box of legal papers, relevant to Nance's motion to withdraw his guilty plea, was inadvertently sent to another institution. Nance filed suit under §1983 alleging that prison officials had denied him access to the courts by misdirecting his legal papers. In affirming the dismissal of the case, the Seventh Circuit stated that:

> But Nance does not protest an ongoing hindrance or contend that another deprivation of legal materials is likely. He has been released from the state's custody. Only damages are available. But damages for what injury? If the injury in question is losing the underlying case, then Heck [] comes into play. Heck holds that a damages remedy that necessarily implies the invalidity of a criminal conviction . . . is impermissible while that conviction stands. Nance pleaded guilty; his motion to withdraw the plea was denied; and although the prison's unconstitutional hindrance of his efforts to withdraw the plea (if that is what occurred) would be a good ground for a new hearing on the motion to set aside the plea, it would not establish that Nance is entitled to damages for wrongful incarceration--not unless he went to trial and was acquitted, or the invalidity of his incarceration was established in some other fashion.

Id. at 591.
The Court went on to state that:

> The holding of Lewis [v. Casey, 518 U.S. 343, 351 (1996),] that a

>   claim based on deprivation of access to the courts requires proof
>   of concrete injury, combined with the holding of Heck, means that
>   a prisoner in Nance's position must have the judgment annulled
>   before damages are available for wrongful imprisonment.

Id. at 591.

Both Nance and Hoard v. Reddy, 175 F.3d 531, 533-534 (7th 1999), stand for the proposition that if a plaintiff in an access to courts claim, who states that a challenge to an underlying conviction was hindered, is seeking damages, such a remedy is only available if the underlying conviction has been vacated or expunged. The relief of damages would necessarily imply the invalidity of the underlying conviction, in contravention of Heck, because in order to succeed on his claim such a plaintiff would have to allege a concrete injury required by Lewis.[2] In such an access to courts claim, the concrete injury can only be wrongful imprisonment: the right to access to courts, in-and-of-itself, does not generate an injury independent of the underlying claim. As such, Cheers cannot seek damages for this claim unless he alleges that his conviction has been expunged (which he has not).[3] It does not follow, however, that Cheers's entire access to the Courts claim against the defendants should be dismissed based on this principle. Cheers is also seeking declaratory relief: that the defendants hindered his efforts to

---

[2] Lewis reiterated the requirement of actual injury in order for a plaintiff to have standing to sue. 518 U.S. at 348-355.

[3] In accordance with Glaus v. Anderson, 408 F.3d 382 (7th Cir. 2005), even though this case is not directly on point, this Court further RECOMMENDS, should the District Court adopt this Recommendation, that Cheers be informed that the Court is not making a final decision on the merits of his damages claim. He should also be informed that he may file his damages claim, as a separate lawsuit, once his underlying conviction has been expunged or otherwise vacated. In addition, Cheers should also be informed that any such lawsuit would be subject to substantive and procedural requirements including provisions that prevent the filing of frivolous lawsuits.

pursue his habeas petition. Neither Nance nor Hoard prevent Cheers from seeking such relief prior to the expungement of his criminal conviction. Section 1983 provides for such declaratory relief. Although, it is clear that Cheers may only seek such relief with respect to the access to courts claim and not with respect to the underlying conviction. That is, he cannot seek a declaration, in this lawsuit, that he was wrongfully convicted.

## II.  CHEERS'S REQUEST FOR INJUNCTIVE RELIEF IS MOOT

Cheers requests that this Court enter a temporary restraining order and a preliminary injunction ordering the defendants to refrain from taking Cheers's personal property in the future without due process of law. (Doc. 1, p. 6).

In order to obtain a preliminary injunction, the moving party must show the following elements: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. Joelner v. Villiage of Washington Park, Illinois, 378 F.3d 613 (7th Cir. 2004); Erickson v. Trinity Theater, Inc., 13 F.3d 1061 (7th Cir. 1994). In this case, the Court need only focus on the first element because Cheers cannot succeed on the merits of his claim for injunctive relief because his claim for injunctive relief is moot.

The defendants argue that Cheers request for injunctive relief is moot because he is no longer incarcerated at Pinckneyville and has been transferred to Muddy River.[4] If a prisoner is

---

[4]Normally, under Rule 12(b)(6) this Court would not be able to consider that Cheers had been transferred in a motion to dismiss a complaint. Typically, under a motion to dismiss, a court is limited to the face of the complaint. Id. However, "[a] district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994); United

transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless "he can demonstrate that he is likely to be re-transferred." Moore v. Thieret, 862 F.2d 148, 150 (7th Cir. 1988); Higgason v. Farley, 83 F.3d 807 (7th Cir. 1996). Nothing in Cheers's affidavits, arguments or complaint indicates Cheers is likely to be re-transferred. Accordingly, Cheers's request for injunctive relief should be dismissed without prejudice[5] as moot.

### III. CHEERS'S CLAIM FOR NEGLIGENCE IS BARRED BY SOVEREIGN IMMUNITY.

The defendants argue that they are entitled to sovereign immunity from Cheers's state based negligence claim. Cheers's negligence claims appears to be that the defendants negligently took and subsequently lost his property, or that they negligently violated his rights under the Constitution. Cheers appears to have asserted this claim against the defendants in the individual and official capacities. Pursuant to Illinois law, a finding of negligence requires a duty, breach of that duty, and that the injury was proximately caused by the breach. See Hooper v. County of Cook, 851 N.E.2d 663 (Ill. 2006). The defendants asserts that Cheers's negligence claims are essentially directed to the State of Illinois and that they are barred by sovereign immunity.

In general terms, sovereign immunity bars lawsuits against the government unless the government consents to be sued. Jackson v. Alverez, 831 N.E.2d 1159, 1163 (Ill. App. Ct.

---

States v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991). Included among the public records that may be considered are public court documents. Henson, 29 F.3d at 284. Accordingly, this Court may take judicial notice of the Notice of a Change of Address (Doc. 5) filed by Cheers. This notice states that Cheers has been transferred to Muddy River and it may be considered by this Court even though this fact is beyond the face of the complaint.

[5]Because at some future date that Cheers could demonstrate that there is a likelihood that he will be re-transferred, this portion of his complaint should be dismissed without prejudice.

2005). Whether sovereign immunity functions to bar a suit against individual employees of the State depends on "the issues involved and the relief sought." Healy v. Vaupel, 549 N.E.2d 1240, 1247 (Ill. 1990). With respect to the issues prong, sovereign immunity can apply if there are no allegations that the employee acted beyond the scope of authority, if the duty allegedly breached is not owed to the public at large, and if the complained of matters are within the normal functions of the employee. See Jinkins v. Lee, 807 N.E.2d 411, 418 (Ill. 2004). With respect to the relief prong, immunity applies if "a judgment for the plaintiff could operate to control the actions of the State or subject it to liability." Id. Thus, pursuant to Illinois' concept of sovereign immunity, a state official is immune from a negligence suit "if the duty allegedly breached arose solely from [State][] employment." Kawaguchi v. Gainer, 535 N.E.2d 435, 447 (Ill. App. Ct. 2005).

      Throughout the plaintiff's complaint, he alleges that each of the defendants was acting under the color of state law. The Court also notes that any duty that the defendants owed to Cheers regarding his property is imposed by the nature of their employment as correctional officers. Finally, there is no doubt that maintaining the personal property of inmates is within the normal function of correctional officers. Pursuant to the complaint, then, it appears that the issues involved are solely based on the employment of the defendants by the State of Illinois. With respect to the relief prong, the plaintiff seeks injunctive relief that would essentially mandate how the State must act. As the duty imposed on the defendants is solely related to their employment by the State, they are entitled to sovereign immunity on the plaintiff's negligence claim. In light of this conclusion, the defendants's remaining argument with respect to this claim will not be address.

### IV. CHEERS'S CLAIM AGAINST DEFENDANT BROWN SHOULD BE DISMISSED.

Cheers alleges in this case that defendants Morganthaler, Grace, James and Flagg were involved in removing his legal papers before his filing deadline related to his habeas petition. Based upon his complaint, defendant Brown was only involved in the removal of his underwear and hygiene items. The only Constitutional claim remaining in this case is his claim that he was denied access to the Courts. Since the removal of his underwear and hygiene items has nothing to do with his claim for access to the Courts, defendant Brown must be dismissed from this claim.

### CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the two Motions for to Dismiss filed by the Defendants, Julius Flagg, Christine Brown, Lt. Tom Grace, C/O Tony James, and Richard Morgenthaler on December 5, 2005 and February 28, 2006 be **GRANTED IN PART** and **DENIED IN PART** (Doc. 19 & 34). Specifically, this Court **RECOMMENDS** that the plaintiff's claims for damages and injunctive relief be **DISMISSED WITHOUT PREJUDICE**, that his claims against Defendant Christine Brown be **DISMISSED**, that Count 5 be **DISMISSED**, and that the Court adopt the foregoing. findings of fact and conclusions of law. The only remaining claim, then, pursuant to this Court's Recommendation is Count 3 for declaratory relief against defendants Morgenthaler, Flagg, Grace, and James.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. <u>Snyder v. Nolen</u>, 380 F.3d 279, 284 (7th Cir. 1004); <u>United States v. Hernandez-Rivas</u>, 348 F.3d 595, 598 (7th Cir. 2003).


**DATED: August 31, 2006**

*s/ Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**
